*399
 
 EDWARD A. DUFRESNE, JR., Chief Judge.
 

 |2The Jefferson Parish District Attorney charged defendant, Dondrick Wilson, with possession of a firearm by a convicted felon in violation of LSA-R.S. 14:95.1, and defendant pled not guilty at arraignment. The trial court denied defendant’s motion to suppress the evidence after a hearing on March 18, 2008. On July 31, 2008, defendant was tried before a twelve-person jury, which found him guilty as charged. The trial judge imposed a sentence of fifteen years in the Department of Corrections without benefit of probation, parole, or suspension of sentence on August 7, 2008. Defendant now appeals.
 

 FACTS
 

 On the evening of October 4, 2007, at approximately 9:00 p.m., Jefferson Parish Sheriffs Officers Gene Dixon and John Taylor, who was an officer in training, were patrolling the 1600 block of Pailet Street, which is a high crime area in Harvey. Officer Dixon explained that he had first-hand knowledge there was a |slot of drug activity in the area and that the police received several calls a day regarding that block. The YTT bar was located in the area of 1632 Pailet Street. As Officer Dixon approached 1632 Pailet Street, he saw three black men standing by a car in the parking lot. Upon seeing the police, two of them immediately turned and walked toward the entrance of the bar. The third man, later identified as defendant, reached into his waistband, opened the car’s passenger door, and put a black object into the car. Defendant then followed the other two men into the bar.
 

 Officer Dixon parked his car in the parking lot, and another unit occupied by two officers arrived on the scene. The two other officers, along with Officer Taylor, followed defendant and the two men into the bar. Meanwhile, Officer Dixon approached the car and observed a black gun on the seat. He opened the unlocked door, removed the gun, unloaded it, and placed the gun in the trunk of his police car. While securing the gun, Officer Dixon noticed that the serial numbers were obliterated.
 

 Officer Dixon then entered the bar. He saw that the officers were conducting field interviews with defendant and the two other men. Officer Dixon placed defendant under arrest. A search incident to arrest revealed a set of keys, which Officer Dixon determined belonged to the car in which defendant had placed the gun.
 

 At trial, the State introduced a copy of the predicate felony alleged in the bill of information as Exhibit 1, which was defendant’s guilty plea to possession of cocaine on February 14, 2005. The parties stipulated that a fingerprint expert would testify that defendant’s fingerprints matched those in State’s Exhibit 1.
 

 |
 
 ¿ASSIGNMENT OF ERROR NUMBER ONE
 

 In his first assigned error, defendant challenges the trial court’s denial of his motion to suppress evidence. He specifically contends the trial judge should have suppressed the gun because it was the product of an actual imminent stop made without reasonable suspicion. The State responds that the police had reasonable suspicion to stop defendant and probable cause to arrest him.
 

 The State has the burden, in a hearing on a motion to suppress evidence, of establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). A trial court’s denial of a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly fa
 
 *400
 
 vors suppression.
 
 State v. Simmons,
 
 07-285 (La.App. 5 Cir. 9/25/07), 968 So.2d 755, 758.
 

 For Fourth Amendment purposes, a seizure occurs either with the application of physical force to an individual or by the individual’s submission to the assertion of official authority.
 
 State v. Sylvester,
 
 01-607 (La.9/20/02), 826 So.2d 1106, 1108. Under the Louisiana Constitution, a person is also “seized” when an actual stop is imminent.
 
 State v. Simmons,
 
 968 So.2d at 758. An actual stop is imminent when the police come upon an individual with such force, that despite the individual’s attempts to flee or elude the encounter, an actual stop of the individual is virtually certain to happen.
 
 State v. Sylvester,
 
 826 So.2d at 1108. The relevant factors in determining whether an actual stop is imminent are the proximity of the police in relation to the defendant at the outset of the encounter, whether the person has been surrounded by the police, whether the police approached the individual with their weapons drawn, whether the police and/or the individual are on foot or in motorized vehicles during the encounter, the location and characteristics of the area where the encounter takes place, and the number of |BpoIice officers involved in the encounter.
 
 State v. Tucker,
 
 626 So.2d 707, 712-13 (La.1993).
 

 In the present case, the record reflects the seizure of the gun was not the result of an actual stop because Officer Dixon took the gun from the car before the investigatory stop took place. At the suppression hearing, Officer Dixon testified that he saw the gun through the car’s window as the other deputies followed defendant and his companions into the bar. He opened the car door and removed the gun. At trial, he explained that, when he walked into the bar, the other officers were conducting field interviews with the men.
 
 [1]
 
 Therefore, the seizure of the gun was not the product of an actual stop.
 

 Moreover, the seizure of the gun was not the product of an actual imminent stop. Officer Dixon testified at the suppression hearing that two of the men in the parking lot immediately walked away as soon as they saw the police approaching the parking lot. At trial, Officer Dixon explained that he was still driving on the street, more than twenty feet away, when he saw defendant put the object, which he later discovered was a gun, in the ear. The men began walking away while Officer Dixon was still in the street. He parked his vehicle about ten feet from the car where defendant had placed the object. Officer Dixon did not approach with his weapon drawn, tell defendant to stop, or activate the lights of his marked police unit. Further, the three officers who entered the bar behind defendant and his companions did not chase them into the bar. Based on the foregoing, an actual stop was not imminent because nothing in the record indicates that the police came upon defendant with such force that, regardless of his attempts to flee, an actual stop was virtually certain.
 

 [ (¡Because the seizure of the gun was not the product of an actual or imminent stop, we find it unnecessary to reach the question of whether there was reasonable suspicion for an investigatory stop. Based on the foregoing discussion, we find no error in the trial court’s denial of defendant’s
 
 *401
 
 motion to suppress evidence. Accordingly, this assignment is without merit.
 

 ASSIGNMENT OF ERROR NUMBER TWO
 

 In this assigned error, defendant challenges the sentence imposed as constitutionally excessive. Defendant was convicted of possession of a firearm by a convicted felon and faced a sentencing range of ten to fifteen years at hard labor without the benefit of parole, probation, or suspension of sentence and a fine between $1,000 and $5,000. LSA-R.S. 14:96.1®). Defendant received the maximum term of fifteen years imprisonment, but not a fine. Defendant now contends that his sentence is excessive because his only prior felony offense was the predicate felony of possession of cocaine. He also argues that the trial judge failed to articulate reasons for the sentence pursuant to LSA-C.Cr.P. art. 894.1. The State responds that defendant did not properly preserve this issue for review; and moreover, the sentence is not excessive.
 

 In the present case, defendant did not file a motion to reconsider sentence nor did he challenge the sentence in the trial court on the basis that the judge failed to comply with LSA-C.Cr.P. art. 894.1. As such, defendant is limited to a review of his sentence for constitutional excessiveness only.
 
 State v. Haywood,
 
 00-1584 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 581.
 

 The Eighth Amendment to the United States Constitution and Article I, Sec. 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even when it is within the applicable statutory range, if it is grossly disproportionate to the offense or imposes needless and purposeless 17pain and suffering.
 
 State v. Warmack,
 
 07-311 (La.App. 5 Cir. 11/27/07), 973 So.2d 104, 109.
 

 In reviewing a sentence for ex-cessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court’s sense of justice. The trial judge is afforded wide discretion in determining sentences, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed.
 
 State v. Berry,
 
 08-151 (La.App. 5 Cir. 6/19/08), 989 So.2d 120, 131,
 
 writ denied,
 
 08-1660 (La.4/3/09), 6 So.3d 767. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate.
 
 State v. Warmack,
 
 973 So.2d at 109.
 

 Based on our review of the record, we do not find that the trial court abused its wide discretion in imposing the fifteen-year sentence on defendant. As noted by the trial judge, defendant displayed an obvious disrespect for the judicial process. The record contains at least two instances where defendant was found in contempt of court during the course of these proceedings. In December of 2007, defendant tested positive for marijuana and was found in contempt of court for appearing under the influence. Also, on March 18, 2008, trial was set; however, defendant left after the court conducted a suppression hearing, thereby necessitating a continuance. As a result of defendant’s leaving, an attachment was issued; and he was subsequently found to be in contempt of court. We further note that defendant committed the instant offense several months after his probationary period had expired for the predicate felony conviction of possession of cocaine. Lastly, we note the seriousness of defendant’s actions in
 
 *402
 
 leaving a loaded weapon on the seat of an unlocked car.
 

 |sGiven these circumstances, we find that the sentence imposed is not constitutionally excessive and further that the trial judge did not abuse his discretion in sentencing defendant to the maximum term of imprisonment. Accordingly, this assigned error is without merit.
 

 ASSIGNMENT OF ERROR NUMBER THREE
 

 Defendant argues the trial judge erred in denying his
 
 Batson
 
 challenges because the State exercised its peremptory challenges in a discriminatory manner to exclude three black prospective jurors, Kenneth Jones, Sean Smith, and Cheyenne Weber. The State responds that it offered race-neutral reasons for its peremptory challenges, which are supported by the record, and that the trial judge did not abuse his discretion in denying the
 
 Batson
 
 challenges.
 

 In
 
 Batson v. Kentucky,
 
 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court delineated a three-step analysis for evaluating a defendant’s claim that a prosecutor used a peremptory strike in a racially discriminatory manner. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. If that showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. The race-neutral explanation need not be persuasive or even plausible. It will be deemed race-neutral unless a discriminatory intent is inherent in the explanation. Third, the court must determine whether the defendant has established purposeful discrimination. It is at the third step that implausible explanations offered by the prosecution “may (and probably will) be found to be pretexts for purposeful discrimination.”
 
 Purkett v. Elem,
 
 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 884 (1995);
 
 State v. Anderson,
 
 06-2987 (La.9/9/08), 996 So.2d 973,
 
 1004-1005, cert. denied
 
 , — U.S.-, 129 S.Ct. 1906, 173 L.Ed.2d 1057 (2009).
 

 [flThe Supreme Court subsequently affirmed and applied the three-part test in
 
 Miller-El v. Dretke,
 
 545 U.S. 231, 239, 125 S.Ct. 2317, 2324, 162 L.Ed.2d 196 (2005), and in
 
 Snyder v. Louisiana,
 
 552 U.S. 472, 128 S.Ct. 1203, 1208, 170 L.Ed.2d 175 (2008). The
 
 Snyder
 
 court stressed that all of the circumstances bearing on the issue of racial animosity must be consulted in reviewing a
 
 Batson
 
 objection.
 

 In the present case, the record reflects that three panels of prospective jurors were examined during voir dire. The record does not reflect the race for all the prospective jurors, but the State noted for the record that the first panel was comprised of fourteen people, seven of whom were black. The State used five peremptory challenges in the first panel, four of which were used to excuse black jurors, including Mr. Smith and Mr. Jones. The State’s sixth and final peremptory challenge was used to excuse Ms. Weber, who was in the second panel of fourteen people. The third panel was comprised of eight people, and the trial court noted for the record that one of the prospective jurors, Ms. Small, was black. The record reflects that at least three black persons were seated on the jury. On appeal, defendant challenges the trial court’s rulings as to Kenneth Jones, Sean Smith, and Cheyenne Weber.
 

 With regard to Mr. Jones, the prosecutor moved to excuse him for cause on the basis that he could not be a fair juror. In support of this challenge, the prosecutor noted that when he had asked the group as a whole whether they could sit in judg
 
 *403
 
 ment of another, there was no response from Mr. Jones until the prosecutor singled him out. The prosecutor said that he “saw some movement that indicated to me that he was holding back.” The prosecutor further explained that Mr. Jones answered that he did not believe it was “right for somebody who’s been a victim to sit on the jury.” Following defendant’s objection, the trial court denied | inthe prosecutor’s challenge, finding that Mr. Jones’ responses did not “rise to the level of striking him for cause.”
 

 After the submission of cause challenges, the parties began exercising peremptory challenges. The State’s first peremptory challenge was on Mr. Jones. The State then accepted Robert Smith, a black potential juror, who was peremptorily challenged by defendant. The State’s second peremptory challenge was on Ms. Rousell, a black potential juror, and the third peremptory strike was on Sean Smith. At that point, defendant raised a
 
 Batson
 
 objection.
 

 The court initially told the prosecutor to provide race-neutral reasons, since the State had exercised three peremptory challenges on black prospective jurors. The prosecutor objected on the basis that there was no pattern, considering that there were seven black prospective jurors in the panel, four of whom had already been examined. The prosecutor pointed out he had exercised a challenge for cause on Mr. Jones, but had accepted Robert Smith, whom defendant struck. The court agreed there was no pattern, considering that six prospective jurors had been questioned, four of whom were black. The judge also stated the State’s strike against Mr. Jones was expected, just as the defendant’s strike to Robert Smith had been expected. The judge found that “it doesn’t show a pattern, it just shows that there is, you know, more African Americans on this top panel.”
 

 The State exercised a peremptory challenge on the next prospective juror, Mr. Stevenson, who was black, which drew another
 
 Batson
 
 objection. The trial judge then told the State to give race-neutral reasons for each of the four peremptory challenges to black prospective jurors in “an abundance of caution.” Regarding Mr. Jones, the prosecutor referenced the reasons he had indicated earlier in the cause challenge, which the record reflects were based on the prosecutor’s belief that Mr. Jones could not be a fair juror. The prosecutor explained he struck |nMr. Smith because he was a young student. The prosecutor believed students tend to have liberal attributes and said that he did not want liberal attitudes in this court. Defendant objected on the basis that the Supreme Court in
 
 Snyder
 
 had said that being a student was not a race-neutral reason.
 
 [2]
 
 The prosecutor responded that his perception of students having liberal attitudes was a race-neutral reason. After the state gave reasons for its four peremptory challenges on black jurors, the trial judge stated “Okay. Alright. I think that’s race neutral reasons, and not a
 
 Batson
 
 Challenge [sic].”
 

 Voir dire questioning was then conducted on the second panel of jurors. When the State peremptorily challenged Ms. Weber, defendant made a
 
 Batson
 
 objection. The prosecutor said that he did not believe any pattern had been established, since he had explained his race-neutral reasons. The trial judge responded that
 
 *404
 
 two black jurors had been accepted and he agreed there was no pattern. Defendant objected, stating that the judge had already found a pattern and that Ms. Weber had provided no reasons different from any other juror. The trial judge responded, “Well, I guess, go ahead in an abundance of caution, put your reason on the record.”
 

 The prosecutor provided his reasons for excusing Ms. Weber and the court supplied its own observations as follows:
 

 MR. AMSTUTZ (prosecutor):
 

 My racial neutral reason is one, she, I think said, she was a teacher, which is a liberal education; and number two, she had a relative arrested for domestic violence. Arrest is one thing, domestic violence is something else. I didn’t go into the details of it, but she’s the one said it. Those are my race neutral reasons.
 

 THE COURT:
 

 |12Alright. I don’t — I mean, this lady, I mean when I was questioning before y’all ever even got to them, I was thinking to myself that she had some type of problem, because she’s looking very disinterested. I mean, she doesn’t want to be here. Her eyes are half closed. I was trying to figure out on my own whether she had an attitude; whether it was me; she had — with this Court or something. But she’s got a serious attitude, and I mean I almost told her something. So, I just want to put that on the record so the Court of Appeal gets a full taste of this lady. Alright. That’s State 6.
 

 Defendant now argues that the trial court erred in denying his
 
 Batson
 
 challenges as to Mr. Jones, Mr. Smith, and Ms. Weber. In applying the
 
 Batson
 
 analysis to the instant case, the first inquiry is whether defendant made a prima facie showing that the prosecutor used his peremptory challenges to exclude potential jurors on the basis of race. The trial court did not specifically state on the record whether defendant met this initial burden; however, the judge asked the state, out of an abundance of caution, to give reasons for the peremptory challenges. A trial judge’s demand that a prosecutor justify his peremptory strikes is tantamount to a finding that the defense has produced enough evidence to support an inference of discriminatory intent.
 
 State v. Green,
 
 94-0887 (La.5/22/95), 655 So.2d 272, 288.
 

 We now turn to the second step of the
 
 Batson
 
 analysis which focuses on whether the prosecutor offered race-neutral explanations for his peremptory challenges. With regard to Mr. Jones, the prosecutor voiced his concern that Mr. Jones could not be fair. The State based this concern on Mr. Jones’ expressed belief that it would not be fair to have victims of crime sit on the jury. With regard to Mr. Smith, the prosecutor stated that he was a young student;
 
 [3]
 
 and students generally tend to have liberal attitudes, which he did not want in this case. Lastly, with regard to Ms. Weber, the prosecutor challenged her because she was a |is“teacher which is a liberal education,” and also because she had a family member arrested for a domestic dispute.
 
 [4]
 
 The trial judge deter
 
 *405
 
 mined that these reasons were facially race-neutral. We find no reason to disturb that determination by the trial judge. Accordingly, it is now necessary to proceed to step three of the
 
 Batson
 
 analysis, which focuses on whether the defendant has proven purposeful discrimination.
 

 A defendant has the burden to establish discrimination in jury selection. In determining whether a defendant has met his burden of showing purposeful racial discrimination in the State’s exercise of peremptory challenges, the proper question is whether the proof offered by the defendant, when weighed against the State’s proffered race-neutral reasons, is strong enough to convince the trier of fact that the claimed discriminatory intent is present.
 
 State v. Bourgeois,
 
 08-457 (La. App. 5 Cir. 12/16/08), 1 So.3d 733, 738. A trial judge’s findings on a claim of purposeful discrimination are entitled to great deference by the reviewing court because they depend largely on credibility evaluations. Credibility can be measured by factors including the prosecutor’s demeanor, how reasonable or how improbable the explanations are, and whether the proffered reason has some basis in accepted trial strategy.
 
 State v. Anderson,
 
 996 So.2d at 1004. The trial judge has the advantage of observing the characteristics and demean- or of the attorneys and prospective jurors. Therefore, the court occupies the best position for deciding whether a discriminatory objective underlies the peremptory challenges.
 
 State v. Gant,
 
 06-232 (La. App. 5 Cir. 9/26/06), 942 So.2d 1099, 1118,
 
 writ denied,
 
 06-2529 (La.5/4/07), 956 So.2d 599.
 

 Based on our review of the entire voir dire transcript, we find that |udefendant failed to meet his burden of proving purposeful discrimination; and therefore, the trial judge did not err in denying defendant’s
 
 Batson
 
 challenges.
 

 With regard to Mr. Jones, the record does not reflect that the prosecutor’s reasons for excusing Mr. Jones were a pretext for race. The prosecutor believed Jones could not be a fair juror based on Jones’ responses to a question about his ability to sit in judgment of others. The record contains several instances indicating the prosecutor was concerned about all the prospective jurors’ feelings about sitting in judgment of another. In fact, the prosecutor asked the same question to each panel of jurors, each of which included at least one black prospective juror.
 

 The record further does not support defendant’s contention that the prosecutor’s reasons for excusing Mr. Smith, a young student, were a pretext for race. The record reflects similar treatment by the prosecutor to Ms. Butler, an apparently non-black prospective juror who was a business student. The prosecutor peremptorily challenged Ms. Butler, stating for the record that she appeared to be a “young” student and that she was also a white female. The prosecutor expressly stated that he used the same criteria for excusing her as when excusing Mr. Smith.
 

 With regard to Ms. Weber, the prosecutor challenged her because she was an elementary teacher and because she had a family member arrested for a domestic dispute. We recognize that Ms. Weber was the only prospective juror challenged on the basis of a relative’s criminal history, when there were several prospective jurors who had been arrested or who had relatives with arrests or convictions. The record does reflect, however, that Ms. Weber was uniquely situated in that she was the only prospective juror whose relative had been arrested for a domestic dis
 
 *406
 
 pute, which the prosecutor characterized as domestic violence when challenging her. 11fiWhile we acknowledge that prosecutorial intent at the time of the challenge is the focus, we note the trial judge’s comments regarding this prospective juror. After saying “alright” to the prosecutor’s reasons for challenging Ms. Weber, the court specifically stated for the benefit of the appellate court that this lady “had some type of problem, because she was looking very disinterested. I mean, she doesn’t want to be here. Her eyes are half closed. I was trying to figure out on my own whether she had an attitude; whether it was me; she had — with this Court or something. But she’s got a serious attitude, and I mean I almost told her something.”
 

 In the present ease, it is clear that the trial judge paid close attention to the responses of each potential juror during voir dire and carefully considered the responses of the State to defendant’s
 
 Batson
 
 challenges. In view of the vast amount of discretion accorded to the findings of the trial court in assessing intent and judging credibility, we cannot say the trial court erred in choosing to believe the race-neutral explanations offered by the State. Accordingly, we find that defendant has failed to carry his burden of proving purposeful discrimination with regard to the three prospective jurors at issue herein. The arguments raised by defendant in this assigned error are without merit.
 

 ASSIGNMENT OF ERROR NUMBER FOUR
 

 Defendant contends the trial judge erred by denying his challenge for cause to prospective juror Robert Smith because Mr. Smith indicated he believed defendant would have to prove his innocence. The State responds the trial judge properly denied the cause challenge, since Mr. Smith’s responses demonstrated that he would be a fair and impartial juror.
 

 Prejudice is presumed when the trial court erroneously denies a challenge for cause and the defendant ultimately exhausts his peremptory challenges. Thus, to prove |1fithere has been reversible error warranting reversal of the conviction and sentence, defendant must demonstrate 1) the erroneous denial of his challenge for cause, and 2) the use of all his peremptory challenges.
 
 State v. Anderson,
 
 996 So.2d at 996;
 
 State v. Gant,
 
 06-232 (La.App. 5 Cir. 9/26/06), 942 So.2d 1099, 1113-1114,
 
 writ denied,
 
 06-2529 (La.5/4/07), 956 So.2d 599.
 

 LSA-C.Cr.P. art. 797, subsections (2) and (4) provide that a defendant may challenge a juror for cause on the following pertinent grounds:
 

 (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
 

 [[Image here]]
 

 (4) The juror will not accept the law as given to him by the court[.]
 

 A challenge for cause should be granted, even when a prospective juror declares the ability to remain impartial, if the juror’s responses as a whole reveal facts from which bias, prejudice, or inability to render a judgment according to law may be reasonably implied. However, a prospective juror’s seemingly prejudicial response is not grounds for an automatic challenge for cause, and the trial court’s refusal to excuse the juror on the grounds of impartiality is not an abuse of discretion, if after further questioning the poten
 
 *407
 
 tial juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence.
 
 State v. Lindsey,
 
 06-255 (La.1/17/07), 948 So.2d 105, 108. A trial judge is afforded broad discretion in ruling on challenges for cause, and those rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion.
 
 State v. Strickland,
 
 04-843 (La.App. 5 Cir. 3/1/05), 900 So.2d 885, 895,
 
 writ denied,
 
 05-820 (La.6/17/05), 904 So.2d 683.
 

 In the present case, the record shows that defendant timely objected to the trial court’s ruling denying his challenge for cause, and that he exhausted all of his 117peremptory challenges. However, defendant has not shown that the trial court abused its discretion in denying the challenge for cause as to Robert Smith.
 

 During voir dire questioning in the instant case, Mr. Smith advised the court that he was an LSU police officer and knew a lot of people in law enforcement. When the judge asked whether he would be fair and impartial to both the State and defense, considering his law enforcement background, Mr. Smith answered that he would “just try to — just be fair.” During subsequent voir dire questioning, defense counsel asked Mr. Smith the following question:
 

 MR. WILLIAMS (defense counsel):
 

 Okay. So you think — and you’re a police officer, and without getting into any personal experience, you feel that knowing what you know and the way that you feel about things, that as he sits here, we’re going to have to show you that he didn’t do it?
 

 MR. SMITH:
 

 Yes.
 

 MR. WILLIAMS:
 

 Okay.
 

 MR. SMITH:
 

 So, it’s proven to me.
 

 Defense counsel did not make any further inquiry into Mr. Smith’s responses and went on to question other prospective jurors. Defendant later challenged Mr. Smith for cause on the basis of the juror’s statement that defense counsel would have to prove defendant was innocent. The prosecutor objected to the challenge for cause noting that Mr. Smith’s answer was the result of the way defense counsel presented the question to Mr. Smith and further that Mr. Smith’s answers as a whole indicated he could be fair to both sides. The trial judge then addressed Robert Smith as follows:
 

 | irTHE COURT:
 

 ... Mr. Smith, let me just run by you something real quick. I know we had talked earlier about, you know, the burden of proof and all, and I just want to make sure that we’re on the same page. Do you believe that the defendant would have to prove his innocence, or that the state would have to prove beyond a reasonable doubt that he’s guilty.
 

 MR. SMITH:
 

 They have to prove beyond a reasonable doubt.
 

 THE COURT:
 

 Okay. In other words, he’s not — I know you’re in law enforcement. You probably know more about the process than most people in here, but will he get the benefit of his presumption of innocence, and you will require the state to prove its case to your satisfaction beyond a reasonable doubt?
 

 MR. SMITH:
 

 Yes.
 

 We find that prospective juror Robert Smith’s responses, considered in their entirety, show that he understood and accepted that the State had the burden of proving defendant’s guilt. He answered
 
 *408
 
 affirmatively when the trial judge asked him whether he could return a verdict of not guilty. Further, he did not indicate that he could not apply the law as instructed when all the prospective jurors were questioned by the trial judge and the prosecutor. Instead, Mr. Smith answered affirmatively to an ambiguous question propounded by defense counsel, who apparently did not engage in any further dialog with Mr. Smith to clear up the response. Additionally, the trial judge made a determination that Mr. Smith could be fair and impartial after personally questioning him.
 

 Based on the foregoing, we find that the trial judge did not abuse his broad discretion in denying defendant’s challenge for cause. Thus, the arguments raised by defendant in this assignment are without merit.
 

 |
 
 ¡(ASSIGNMENT OF ERROR NUMBER FIVE
 

 In his final assigned error, defendant argues that the trial court erred by failing to declare a mistrial for comments made by the prosecution during closing arguments and by failing to admonish the jury to disregard the improper comments. Specifically, defendant contends a mistrial was warranted under LSA-C.Cr.P. art. 775 because the prosecutor commented on facts outside the evidence by remarking in the State’s rebuttal that Officer Taylor’s testimony was consistent with what he had told the prosecutor in an interview. The State contends the trial judge did not err in denying the mistrial motion because defendant was not prejudiced by the prosecutor’s comments.
 

 In the present case, the prosecutor began his closing argument by explaining that he called Officer Dixon as a witness because he was the case officer, but did not call Officer Taylor as a witness because he “didn’t do anything.” Defense counsel countered in closing argument that the State did not call Officer Taylor because that officer did not see what Officer Dixon had seen. The defense went on to argue that he found it incredulous that Officer Taylor did not see the car or the defendant toss an object into it. According to defense counsel, Officer Taylor’s failure to corroborate what Officer Dixon saw while Officer Taylor was next to Officer Dixon, created doubt about what really happened that evening.
 

 In rebuttal, the prosecutor reiterated that he called Officer Dixon because he was the investigating officer. The prosecutor said that Officer Dixon was outside while Officer Taylor was inside. He repeated that Officer Taylor did not write a report. The prosecutor then said, “I interviewed Mr. Taylor, and he told me the same thing he said today.” Defendant objected to the comment on the basis that the prosecutor’s comments were not within the scope of the evidence. The judge responded, “This is argument of counsel. It’s not evidence.”
 

 12pDefendant then moved for a mistrial, which the trial judge denied. The judge explained that he told the jury that the comment was not evidence, that it was argument of counsel, and that the prosecutor refrained from further comment about the matter.
 

 According to LSA-C.Cr.P. art 775, upon the defendant’s motion, a mistrial shall be ordered, and in a jury trial, the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
 
 [5]
 
 A mistrial is a drastic remedy and, except
 
 *409
 
 in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. Whether a mistrial should be granted is within the sound discretion of the trial court and the denial of a motion for mistrial will not be disturbed absent an abuse of that discretion.
 
 State v. Smith,
 
 04-340 (La.App. 5 Cir. 10/26/04), 888 So.2d 280, 285.
 

 LSA-C.Cr.P. art. 774 provides that the scope of closing argument shall be confined to the evidence admitted, to the lack of evidence, to conclusions of fact that the state and defendant may draw therefrom, and to the law applicable to the case. This article further states that the argument shall not appeal to prejudice, and the State’s rebuttal argument shall be confined to answering the argument of the defendant.
 

 A prosecutor has considerable latitude in making closing arguments. A conviction will not be reversed due to improper remarks during closing argument unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict.
 
 State v. Lai,
 
 04-1053 (La.App. 5 Cir. 4/26/05), 902 So.2d 550, 559,
 
 writ denied,
 
 05-1681 (La.2/3/06), 922 So.2d 1175. The laiLouisiana Supreme Court has recognized that “much credit should be accorded to the good sense and fairmindedness of jurors who have seen the evidence and heard the argument, and have been instructed repeatedly by the trial judge that arguments of counsel are not evidence.”
 
 State v. Mitchell,
 
 94-2078 (La.5/21/96), 674 So.2d 250, 258,
 
 cert. denied,
 
 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 538 (1996).
 

 With regard to defendant’s argument that the trial judge failed to admonish the jury, we note that immediately after defendant’s objection, the trial court stated, “[t]his is argument of counsel. It’s not evidence.” Defendant did not request any further admonishment from the trial court. We further note that in the final instructions, the judge informed the jury that the opening statements and the closing arguments of the attorneys were not to be considered as evidence.
 

 Further, defendant failed to show how he was prejudiced by the prosecutor’s rebuttal argument. In fact, defendant acknowledges in his brief that the prosecutor’s comments suggested to the jury that Officer Taylor, a defense witness, should be believed because he testified consistently with what he told the prosecutor before trial.
 

 Based on the foregoing discussion, we find that the trial court did not abuse its discretion in denying defendant’s motion for mistrial based on improper closing arguments. Accordingly, this assigned error is without merit.
 

 ERROR PATENT DISCUSSION
 

 We have also reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990).
 

 Our review reveals that there are discrepancies between the July 31, 2008 minute entry and the corresponding transcript. The minute entry indicates Mr. Messina was accepted as a juror, but the transcript reflects Mr. Messina was [ 22challenged peremptorily by defendant and did not serve on the jury. Additionally, the minute entry indicates Mr. Brown was excused by the court for cause, while the transcript reflects defendant exercised a peremptory challenge to Mr. Brown. The minute entry also does not reflect the jury was sworn, whereas the transcript does so reflect. The transcript prevails
 
 *410
 
 when there is a discrepancy between the minutes and the transcript.
 
 State v. Lynch,
 
 441 So.2d 732 (La.1983).
 

 Accordingly, for the reasons set forth herein, we affirm defendant’s conviction and sentence; however, we remand the matter to the trial court with a directive to amend the minute entry to conform to the transcript.
 

 CONVICTION AND SENTENCE AFFIRMED; REMANDED TO CORRECT MINUTE ENTRY.
 

 [1]
 

 . In determining whether the trial court’s ruling on a defendant’s motion to suppress is correct, an appellate court is not limited to the evidence adduced at the suppression hearing, but may also consider the evidence presented at trial.
 
 State v. Huntley,
 
 08-125 (La. App. 5 Cir. 5/27/08), 986 So.2d 792, 796.
 

 [2]
 

 . Defendant mischaraclerized the
 
 Snyder
 
 decision. The
 
 Snyder
 
 Court did not hold that being a young student could not be a racially-neutral reason. Rather, the
 
 Snyder
 
 Court found that the prosecutor’s reasons for excusing Mr. Brooks, who was a student, were not supported by the record.
 

 [3]
 

 . In
 
 State v. Perrilloux,
 
 03-917 (La.App. 5 Cir. 12/30/03), 864 So.2d 843, 850,
 
 writ denied,
 
 04-418 (La.6/25/04), 876 So.2d 830, this court stated, "A juror's age has been found to be an acceptable race-neutral reason the State to exercise a peremptory challenge.”
 

 [4]
 

 . Being a teacher has been held to be a racially-neutral reason to meet the State’s burden at
 
 Batson's
 
 second step.
 
 State v. Toussaint,
 
 98-1214 (La.App. 5 Cir. 5/19/99), 734 So.2d 961, 965,
 
 writ denied,
 
 99-1789 (11/24/99), 750 So.2d 980. Further, a juror who has a family member with a criminal record is a race-
 
 *405
 
 neutral explanation.
 
 State v. Baker,
 
 34,973 (La.App. 2 Cir. 9/26/01), 796 So.2d 145, 154.
 

 [5]
 

 . LSA-C.Cr.P. arts. 770 and 771 are not at issue in this assignment.