JUDE G. GRAVOIS, Judge.
|2The defendant, Timothy Victor, has appealed his conviction for possession with intent to distribute cocaine in violation of LSA-R.S. 40:967 A. For the reasons that follow, we affirm defendant’s conviction and sentence.

FACTS

At trial, Detective Mark Layrisson of the Jefferson Parish Sheriffs Office Narcotics Division testified that he received information from a Confidential Informant (“Cl”) that led to a narcotics investigation involving the residence located at 2912 Destrehan Avenue, Apartment C, in Harvey, Louisiana. A controlled buy with the Cl was set up. Prior to the buy, the Cl’s clothing and vehicle were searched and found to be free of contraband. Detective Layrisson, assisted by his partner Detective Eric Boland, then conducted physical surveillance of the location where the controlled purchase was to take place. Constant visual surveillance on the Cl was maintained until he entered the apartment. Detective Layrisson testified that the Cl remained inside the apartment for approximately two [.-¡minutes. Once the Cl exited the apartment, constant surveillance was again maintained until he reached the prearranged meeting location. When the Cl arrived at the pre-arranged meeting location, he supplied the detectives with a rock-like substance that he purchased at the apartment, which field-tested positive for cocaine.
During the surveillance, Detective Lay-risson observed a vehicle parked outside of the residence in question. After the controlled purchase was concluded, he ran the vehicle’s license plate number through the Sheriffs Office database. Records indicated that the vehicle was registered to Kimberly Carter and was also associated with Calvin Brown. Detective Layrisson then proceeded to obtain a photograph of Calvin Brown.
Detective Layrisson subsequently applied for and obtained a search warrant for 2912 Destrehan Avenue, Apartment C, in Harvey, Louisiana. The warrant was executed the next day, on October 14, 2009. Both Detectives Layrisson and Boland participated in the execution of the warrant. After gaining entry into the residence, the detectives discovered a male, later identified as defendant, and a female lying on an air mattress, in the rear bed *306 room on the second floor. The defendant, who was completely nude, stood up. The female, later identified as Kimberly Carter, who was nude from the waist down, remained on the air mattress covered with a blanket from the waist down. Detective Layrisson observed a shirt, a pair of men’s pants, men’s underwear, and a pair of women’s pants on the floor in the bedroom. Defendant was handcuffed. Ms. Carter was allowed to dress and was removed from the air mattress. Defendant requested his pants, while motioning to the pair of men’s pants on the floor in the bedroom.
Before giving defendant his pants, Detective Boland searched them for weapons or contraband. This search yielded a clear plastic bag containing |4numerous off-white, rock-like substances, individually wrapped, consistent with crack cocaine. Detectives Layrisson and Boland testified that defendant did not appear to be surprised by this discovery. This substance field-tested positive for crack cocaine. No other drugs were found in the residence.
Detective Layrisson testified that he then advised defendant of his Miranda[1] rights and brought him alone in the second bedroom on the second floor to speak to him. When questioned, defendant stated that his name was Calvin Brown. Detective Layrisson responded: “You’re not Calvin Brown. I have a picture of Calvin Brown, and you’re not him.” Defendant then admitted that his name was Timothy Victor and further gave Detective Layris-son his correct date of birth.
When Detective Layrisson spoke with Ms. Carter, she provided her correct name. She stated, however, that defendant’s name was Calvin Brown. When Detective Layrisson advised Ms. Carter that defendant’s name was not Calvin Brown, she stated that they had been dating for the past two weeks and that he had lied to her and told her that his name was Calvin Brown. Yet, defendant’s social security card was discovered inside of Ms. Carter’s purse, which was searched after being located in the rear second floor bedroom.
Also seized from the residence were an opened box of plastic sandwich bags found on the first floor in a kitchen drawer, and a cellular phone found near the air mattress in the same room where defendant and Ms. Carter were located. Ms. Carter further stated that the cellular phone belonged to her, but that defendant had frequently used it.
After presentation of the State’s evidence, Ms. Carter testified that she lived in the apartment on Destrehan Avenue with Pat LaCarter, Vernon Clayton, whom she knew as Bucky, and defendant. She further testified that the detectives | .^searched defendant’s pants then gave them to him, but she never saw them pull anything out of his pants and defendant did not have drugs in his possession that day. She also testified that she had never seen defendant sell, smoke, or buy crack cocaine. On cross-examination, she asserted that the police were lying about finding cocaine in defendant’s pocket, and that her roommate, Vernon Clayton, was the person selling cocaine out of the residence.
Thomas Angelica of the Jefferson Parish Sheriffs Office crime lab, an expert in forensic science in the identification and analysis of controlled dangerous substances, tested the evidence in this case and authored a report of his findings. He testified that the evidence consisted of fifteen rocks that were individually wrapped in plastic, all inside of another plastic bag. He tested a random sampling from five of the fifteen rocks and found all five con *307 tained cocaine. The net weight of the drugs was between 1.5 to 2 grams.
Sergeant Joe Williams of the Jefferson Parish Sheriffs Office Narcotics Division, an expert in the field of use, packaging, distribution, and value of narcotics, testified that the quantity and packaging of the evidence was consistent with distribution of cocaine rather than personal use.
Additionally, Ms. Aiseha Prudhomme of the Jefferson Parish Sheriffs Office crime lab, an expert in fingerprint identification and comparison, fingerprinted defendant on the day of trial. She compared these fingerprints to the fingerprints taken in a conviction packet in which defendant was convicted of possession with the intent to distribute marijuana, and testified that both sets of fingerprints belonged to defendant.
By unanimous verdict, defendant was found guilty of possession with intent to distribute cocaine. After defendant’s motion for a new trial was denied, he was sentenced to seven years imprisonment. Defendant then admitted to a multiple bill |fiof information charging him as a second felony offender. The original sentence was vacated and he was sentenced to fifteen years imprisonment. This appeal followed.

ASSIGNMENT OF ERROR NO. ONE— Improper denial of Motion for Continuance

It was reversible error for the court to deny defendant’s motion to continue where counsel had only two days [sic] notice that the state would try Timothy Victor on April 12, 2010, rather than the other cases set for trial that day and defense counsel is an indigent defender with an excessive caseload.
In his first assignment of error, defendant contends that the trial court erred in denying his motion for a continu-anee that was based on his appointed counsel’s lack of preparedness for trial. He maintains that defense counsel was unable to conduct any meaningful investigation and preparation for trial because of inadequate notice and a heavy workload. Specifically, defendant asserts that the State only gave his counsel two days’ notice concerning which trial of several trials the State intended to try on April 12, 2010, “which left counsel scrambling to secure witnesses and prepare for trial.” Defendant further alleges that the denial of his motion to continue violated his Sixth Amendment right to counsel, prior to trial, which is not subject to review for harmless error.
The State responds that the trial court did not commit error in denying defendant’s motion to continue asserting that defendant failed to show specific prejudice resulting from the denial of the motion to continue because defense counsel was able to secure the presence of his witness for the trial. The State also submits that defendant’s claim that he was denied his Sixth Amendment right to counsel when the requested continuance was denied also fails because defense counsel had a substantial period of time to perform a meaningful investigation, he |7in fact secured witnesses, and subjected the State’s case to meaningful cross-examination. Thus, the circumstances in this case do not fall within the purview of cases where prejudice would be presumed.
The denial of a motion for continuance on grounds of counsel’s lack of preparedness does not warrant reversal unless counsel demonstrates specific prejudice resulting from the denial. State v. Snyder, 98-1078, p. 33 (La.4/14/99), 750 So.2d 832, 856-57, citing State v. Haarala, 398 So.2d 1093, 1099 (La.1981). This specific prejudice requirement has been disregarded [by the Louisiana Supreme *308 Court] in cases where the preparation time was so minimal as to call into question the basic fairness of the proceeding. Id., citing State v. Jones, 395 So.2d 751 (La.1981); State v. Durio, 371 So.2d 1158 (La.1979). The Louisiana Supreme Court has also held that when preparation time is unreasonably short, counsel has been diligent, and there is a general allegation of prejudice, denial of a motion for a continuance is an abuse of discretion which constitutes reversible error.[2]
In this case, the record reflects that defendant was arraigned on December 22, 2009. He was represented by attorney Raul Guerra for arraignment purposes only. On that same day, attorney Jacques Touzet of the Public Defender’s Office was appointed. Mr. Touzet represented defendant at trial. Defense counsel appeared on January 28, 2010 for a pretrial conference where the State provided discovery to defense counsel and a motion hearing date was set for February 25, 2010. The motion hearing was continued to March 25, 2010, at the State’s request. On March 25, 2010, the motion hearing was held and trial was set for the week of April 12, 2010. Written notice was given to defendant at that time. On April 7, |r2010, the State filed a motion for discovery and a notice of intent to introduce La.Code of Evidence art. 404(B) evidence. These motions were set to be heard on April 12, 2010. On April 12, 2010, defense counsel requested a continuance of the State’s hearings because he was not prepared to proceed. The trial court granted defendant’s request and set the motions and trial for the next day, April 13, 2010.
On April 13, 2010, defense counsel filed written motions to again continue the Article 404(B) hearing and the trial. Defendant’s written motion to continue the trial specifically asserted that he was not informed until Saturday, April 10, 2010, just two days before the trial was scheduled, that the State would try defendant’s case over four other cases set for trial in the same division. He further stated that defense counsel was also assigned to Division “L” of the trial court in which he also had cases set for trial. Last, defense counsel argued that he struggled to secure a witness, who was not in court as of the filing of the motion. Defense counsel requested a six-day continuance until April 19, 2010.
At the hearing, defense counsel stated the following:
Your honor, before we proceed, I did file out of an abundance of caution a motion to continue the trial. A lot of it’s what we talked about yesterday. It’s embodied in the motion. The main issue was a witness that was in north Mississippi near the Alabama border. I’ve had constant contact with her, and I lost contact with her. This weekend I did re-establish, and she’s present in the courthouse as of a couple of minutes ago. So I do have this motion. It’s in the record. It’s been served upon the State, but I will notify the Court that one of the bigger issues aside from preparation, one of the bigger issues was the missing witness, and I have cured that problem .... So I will leave it to the Court’s discretion to grant or deny it.
The trial court denied both the motion to continue the Article 404(B) hearing and the motion to continue the trial, over de *309 fense counsel’s objection, noting that defense counsel had adequate time to prepare and that it had given defense counsel additional time for preparation. It also noted that “Division ‘L’ was not in the | ^section yesterday afternoon and is not in the section today. So I’m [sic] don’t see any direct conflict with their docket[.]”
There were approximately three and a half months between defendant’s arraignment and trial. Defendant and appointed counsel appeared at a hearing and received discovery on January 28, 2010, over two months prior to trial. Further, defendant received notice of the trial date at the hearing on the motions to suppress that was held on March 25, 2010, approximately two-and-a-half weeks before the scheduled trial date. Three-and-a-half months for preparation of this straightforward case is not so unreasonably short as to call into question the basic fairness of the proceeding.
Contrary to defendant’s contention, the record reflects that defense counsel had a sufficient amount of time to perform a meaningful investigation. The record shows that defense counsel effectively cross-examined the State’s witnesses, was familiar with the facts of the case, and gave opening and closing arguments. As the State asserts, defense counsel even admitted photographic evidence as well as presented a witness that challenged Detectives Layrisson and Boland’s testimonies in reference to an essential element of the charged offense,[3] which, defense counsel admitted, cured an underlying issue upon which the continuance was originally requested. Finally, the trial court continued the trial for an additional day, which gave the defense counsel additional time to secure the witness and prepare for trial.
In Haarala, supra, the defendant argued that defense counsel received assurances that another client’s case would be tried first, and when that case was continued, counsel was left inadequately prepared to try defendant’s ease.[4] The Louisiana Supreme Court found no merit in the defendant’s argument, noting that: hndefense counsel had adequate time to prepare, as he was actively engaged in the representation of the defendant for about ten weeks prior to trial; the trial date was set immediately after arraignment; discovery was completed well prior to trial; the defense’s trial strategy never materially varied and was not unduly complicated; and, no claim of prejudice was made, nor did the record support such a claim. The Supreme Court noted that despite ample advanced notice of the accused’s trial date, the defense failed to seek a continuance until the day of trial.[5]
As in Haarala, supra, defendant in this case also argues that defense counsel was not given adequate notice that defendant’s case would be tried over other cases also scheduled for trial in the same section of court, which left counsel unprepared to try defendant’s case. Like the Haarala court concluded, we find that defense counsel in this case had adequate time to prepare for trial as he was actively engaged in the representation of defendant for at least two months prior to trial. Discovery was also completed well in advance of trial, and defense counsel’s strategy did not appear to materially change nor did it appear unduly complicated. Although defendant failed to request a continuance until the day of trial, the trial court continued the *310 trial for an additional day because defendant was not prepared to move forward. Furthermore, defendant failed to show he was prejudiced by the denial of his motion to continue. Particularly, he failed to demonstrate how his strategy would have been any different had the trial court granted a continuance. Accordingly, we find that the trial court did not err in denying defendant’s motion to continue.
|, ^ASSIGNMENT OF ERROR NO. TWO — Denial of Batson challenges
The trial court erred in accepting the prosecutors [sic] reasons for using peremptory challenges to remove minority jurors.
In his second assignment of error, defendant argues that the trial court erred in accepting the prosecutor’s reasons for using peremptory challenges to remove minority jurors based on race. Specifically, defendant challenges the excusal of African-American jurors Walter Robinson and Sue Bowman. He contends that Walter Robinson appeared perfectly suited for service as a juror. After defendant lodged a Batson[6] objection, the State attempted to give race-neutral reasons for the strike. Defendant further argues that when he challenged the State’s backstrike of Sue Bowman, the State cited inattentiveness, unwillingness to answer questions, and other behavioral issues that could have risen to a challenge for cause. Defendant alleges that the State instead waited until defendant had no peremptory challenges left to backstrike Sue Bowman, which allowed the State to essentially choose the remaining three white jurors by using its remaining peremptory challenges to strike minorities.
Defendant further argues that there was only one African-American juror to serve on the jury and she stated that she had served on a jury before and voted guilty along with the majority. Defendant contends that the State was successful in eliminating all Asians, Hispanics, and almost all African-Americans. The defendant notes that Ronald Jackson and Terri Banks, both African-Americans, were challenged and dismissed for cause over defendant’s objections. The State also used a peremptory challenge to strike Cheng Tsai, who was Asian, but who otherwise appeared fit for service.[7] Defendant concludes that the peremptory strikes by the prosecutor against minorities, the statement and actions of the | ^prosecutor, the composition of the jury finally empaneled, and the backstrike of juror Sue Bowman establish purposeful race discrimination.
The State responds that the trial court properly denied defendant’s Batson objection as he failed to prove purposeful discrimination in the selection of the jury. It contends that although a Batson objection was raised by the defense regarding the excusal of African-American juror Walter Robinson, the trial court ruled that a pri-ma facie case of discrimination had not been established; however, the State had already offered that the basis of the peremptory challenge was because Mr. Robinson had serious problems with the use of confidential informants in drug investigations, which was relevant because the State used a confidential informant to develop information and obtain a warrant in defendant’s case. The State further contends that Sue Bowman’s behavior was problematic in that she was either not listening or had a hearing problem and the trial court confirmed these observations. *311 The State concludes that the trial court found no purposeful discrimination in the exercise of the peremptory challenge, and its decision is entitled to great deference. The State further notes that defendant did not object to the State’s exercise of a peremptory challenge with respect to prospective juror Cheng Tsai. In fact, the State asserts that defendant noted that the juror had a heavy accent and agreed that the “language barrier” might cause some difficulty in following the testimony.[8] Likewise, defendant has not assigned as error the granting of State’s challenges for cause in reference to Ronald Jackson or Terri Banks. Contrary to defendant’s assertions, the State points out that it appears that a Hispanic juror, Lorena Gutierrez Toy, served on the jury. Finally, the State notes that although defendant asserts that the statements of the 11sprosecutors further establish purposeful discrimination, he fails to cite to any specific statement, nor does the record provide any such evidence. Therefore, the State concludes that the trial court properly denied defendant’s Batson challenge as he failed to prove purposeful discrimination in the selection of the jury.
The accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. The number of challenges shall be fixed by law. LSA-Const. art. 1, § 17.[9] The Equal Protection Clause of the United States Constitution prohibits purposeful discrimination on the basis of race in the exercise of peremptory challenges. See Batson v. Kentucky, supra. The Batson decision is codified in LSA-C.Cr.P. art. 795(C), which provides that no peremptory challenge made by the State or the defendant shall be based solely upon the race of the juror. Article 795(C) further provides that if an objection is made that the State or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory race-neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror.
In Batson, the United States Supreme Court established a three-step analysis to be applied when addressing a claim that peremptory challenges of prospective jurors were based on race. State v. Jacobs, 07-887, 67 So.3d 535, 554 (La.App. 5 Cir. 5/24/11). Under Batson and its progeny, the defendant challenging the peremptory strike must first establish a prima facie case of purposeful discrimination. State v. Sparks, 88-0017, p. 37 (La.5/11/11) 68 So.3d 435, 468-69. Second, if a prima facie showing is made, the burden shifts to the State to articulate a neutral explanation for the challenge. Id. Third, the trial court then | Mmust determine if the defendant has carried the ultimate burden of proving purposeful discrimination. Id.
In order to establish a prima fa-cie case, the defendant must demonstrate: (1) the prosecutor’s challenge was directed at a member of a cognizable group; (2) the challenge was peremptory rather than for cause; and (3) relevant circumstances suf *312 ficient to raise an inference that the prosecutor struck the venire person on account of his being a member of that cognizable group. Id. This three-prong demonstration by the defendant gives rise to “the necessary inference of purposeful discrimination” by the prosecutor. Id. (Citations omitted.) “The inference is ‘necessary5 because if such an inference cannot be drawn from the evidence presented by the defendant, he is unable to make a prima facie case of purposeful discrimination and his Batson challenge expires at the threshold.” Id. (Citations omitted.) If the trial court finds that the defendant failed to establish the threshold requirement of a prima facie case, then the analysis is complete and the burden never shifts to the prosecutor to articulate neutral reasons. Id. (Citations omitted.)
However, a trial judge’s demand that a prosecutor justify his peremptory strikes is tantamount to a finding that the defense has produced enough evidence to support an inference of discriminatory purpose. State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, 288. In any case, after the State offers a race-neutral explanation for the peremptory challenge, and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant made a prima facie showing becomes moot. Id.
In determining whether the defendant has established a prima facie case of purposeful discrimination in the State’s use of its peremptory challenges, the trial court should consider all relevant circumstances, including any pattern of strikes by the State against members of a suspect class, statements or actions of the | ^prosecutor which support an inference that the exercise of the peremptory strikes was motivated by impermissible considerations, the composition of the venire and the jury finally empaneled, and any other disparate impact upon the suspect class which is alleged to be the victim of purposeful discrimination. Id. The overall racial composition of the venire and the jury ultimately seated is a significant factor often considered in determining whether a prima facie case has been established because it provides a “point of reference.” State v. Holand, 10-0325, pp. 10-11 (La. App. 4 Cir. 4/18/11) 64 So.3d 330, 336 (citations omitted).
If the prima facie showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Jacobs, supra at 555 (citing Batson, 476 U.S. at 97-98, 106 S.Ct. at 1723-24). This second step does not demand an explanation that is persuasive, or even plausible. Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (per curiam). The race-neutral explanation must be one that is clear, reasonably specific, legitimate and related to the case at bar. State v. Collier, 553 So.2d 815, 820 (La.1989). At the second step of the Batson inquiry, the issue is the facial validity of the prosecutor’s explanation. Purkett, supra. Unless a discriminatory intent is inherent in the prosecutor’s explanation, the reason offered will be deemed race-neutral. Id.
The trial court must then determine whether the defendant has established purposeful discrimination. Jacobs, supra at 555 (citing Batson, 476 U.S. at 98, 106 S.Ct. at 1724). It is at this third step that implausible explanations offered by the prosecution “may (and probably will) be found to be pretexts for purposeful discrimination.” Jacobs, supra (quoting Purkett, 514 U.S. at 768, 115 S.Ct. at 1771). The final step of Batson involves evaluating the persuasiveness of the justification proffered, but the ultimate burden of persuasion regarding racial | ^motivation *313 rests with, and never shifts from, the opponent of the strike. Purkett, 514 U.S. at 768, 115 S.Ct. at 1771.
In determining whether a defendant has met his burden of showing purposeful racial discrimination in the State’s exercise of peremptory challenges, the proper question is whether the proof offered by the defendant, when weighed against the State’s proffered race-neutral reasons, is strong enough to convince the trier of fact that the claimed discriminatory intent is present. State v. Bourgeois, 08-457, pp. 9-10 (La.App. 5 Cir. 12/16/08), 1 So.3d 738, 738, writ denied, 09-0336 (La.11/6/09), 21 So.3d 298. Thus, the focus of the Batson inquiry is upon the intent of the prosecutor at the time he exercised his peremptory strikes. State v. Tilley, 99-0569, p. 5 (La.7/6/00), 767 So.2d 6, 12, cert. denied, 532 U.S. 959, 121 S.Ct. 1488, 149 L.Ed.2d 375 (2001). The Supreme Court has held “[i]f a prosecutor’s proffered reason for striking a black panelist applies just as well to an otherwise-similar non-black who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson’s third step.” Miller-El v. Dretke, 545 U.S. 231, 241, 125 S.Ct. 2317, 2325, 162 L.Ed.2d 196 (2005).
A trial judge’s findings on a claim of purposeful discrimination are entitled to great deference by the reviewing court because they depend largely on credibility evaluations. Credibility can be measured by factors including the prosecutor’s demeanor, how reasonable or how improbable the explanations are, and whether the proffered reason has some basis in accepted trial strategy. State v. Wilson, 09-170, p. 13 (La.App. 5 Cir. 11/10/09), 28 So.3d 394, 405, writ denied, 09-2699 (La.6/4/10), 38 So.3d 299. The trial judge has the advantage of observing the characteristics and demeanor of the attorneys and prospective jurors. Therefore, the court occupies the best position for deciding whether a discriminatory objective underlies the peremptory challenges. Id. “[A] trial | ^court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous.” Snyder v. Louisiana, 552 U.S. 472, 477, 128 S.Ct. 1203, 1207, 170 L.Ed.2d 175 (2008) (citing Hernandez v. New York, 500 U.S. 352, 369, 111 S.Ct. 1859, 1871, 114 L.Ed.2d 395 (1991)). “The trial court plays a unique role in the dynamics of a voir dire, for it is the court that observes firsthand the demeanor of the attorneys and venire persons, the nuances of questions asked the racial composition of the venire, and the general atmosphere of the voir dire that simply cannot be replicated from a cold transcript.” State v. Juniors, 03-2425, p. 32 (La.6/29/05), 915 So.2d 291, 319, cert. denied, 547 U.S. 1115, 126 S.Ct. 1940, 164 L.Ed.2d 669 (2006). The Constitution forbids even the striking of a single prospective juror for a discriminatory purpose. See Snyder, 552 U.S. at 478, 128 S.Ct. at 1208.
The Supreme Court subsequently affirmed and applied the three-part Batson test in Miller-El, Snyder, and in Thaler v. Haynes, 559 U.S.-, 130 S.Ct. 1171, 175 L.Ed.2d 1003 (2010) (per curiam). In Miller-El, the Supreme Court emphasized the trial judge’s responsibility to assess the plausibility of the prosecutor’s proffered race-neutral reason “in light of all evidence with a bearing on it.” Miller-El, 545 U.S. at 251-52, 125 S.Ct. at 2331-32. The Supreme Court further stated:
A Batson challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false.
*314 Miller-El, 545 U.S. at 252, 125 S.Ct. at 2332.
Subsequently, in discussing the third step of the Batson inquiry in Snyder, the Supreme Court stressed the trial judge’s pivotal role in determining the plausibility of the State’s race-neutral explanation. The Supreme Court explained ||Sthat the third step requires the trial court to evaluate the prosecutor’s credibility by assessing “not only whether the prosecutor’s demeanor belies a discriminatory intent, but also whether the juror’s demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor.” Snyder, supra at 1208. Referencing its earlier decision in Miller-El, the Supreme Court again stressed that “all of the circumstances that bear upon the issue of racial animosity must be consulted” in determining whether the explanation given for the strike is convincingly race-neutral. Snyder, supra.
In Thaler, supra, the United States Supreme Court considered the question of whether any decision of the Supreme Court “clearly establishes” that a judge, in ruling on an objection to a peremptory challenge under Batson, must reject a demeanor-based explanation for the challenge unless the judge personally observed and recalls the aspect of the prospective juror’s demeanor on which the explanation is based. Id. at 1172. The Supreme Court in Thaler found that, although it appeared that the court of appeals concluded that either Batson or Snyder clearly established such a rule, it believed the court of appeals read far too much into those decisions and its holding, if allowed to stand, would have important implications. As such, the Supreme Court granted the petition for certiorari and reversed the judgment of the court of appeals. Id.
The Supreme Court in Thaler determined that neither Batson nor Snyder held that a demeanor-based explanation for a peremptory challenge must be rejected unless the judge personally observed and recalls the relevant aspect of the prospective juror’s demeanor. Id. at 1174. In reversing the judgment of the court of appeals, the Supreme Court held that no decision of the United States Supreme Court clearly established the categorical rule on which the court of appeals relied. Id. at 1175.
| Review of voir dire in this case
Our review of the voir dire in this case indicates that, during the first panel, the State exercised three peremptory challenges to excuse non-black jurors.[10] Defendant, however, exercised a peremptory challenge against Jermaine Gordon, a black juror whom the State had found acceptable.
During the second panel, the State excused one non-black juror. Again, defendant exercised a peremptory challenge against Druescellar Dumas, a black juror whom the State had found acceptable.
During the third panel, the State excused one non-black juror. Next, the State and defendant accepted Mary Sehul-theis, the only known black to serve on the jury. The State then used its sixth peremptory challenge to backstrike Paul La-Rosa, a white male. The State used its seventh peremptory challenge to excuse its first black juror, Walter Robinson. When excusing Mr. Robinson, the State offered that it was excusing him because he “ex *315 pressed serious concerns about using confidential informants’ testimony.”
Defendant lodged a Batson challenge stating: “... I’m trying to remember where we were with regard to the American — I’ll just lodge a Batson challenge at this point.” The Court inquired as to whether defendant saw a pattern. Defendant responded that once a Batson objection was lodged, it was the State’s duty to show that there is not a pattern, not the reverse. The State responded that it would accept that and argued that it previously accepted Mr. Gordon, a black male and two African-American females, Ms. Dumas and Ms. Schultheis; therefore, it did not believe that there was a pattern, and the trial court agreed. The State then noted that it previously stated its reason for excusing Mr. Robinson relative to the fact Rothat he had serious problems using confidential informants’ testimony. Defendant countered that he asked Mr. Robinson if he could follow the law, and Mr. Robinson responded in the affirmative. The State responded: “Anybody who has a serious problem with potential evidence in the State’s ease is certainly grounds to exercise a peremptory challenge.” The court then responded: “Okay. And I do not see any pattern.” Defendant then noted his objection.
The State exercised its eighth peremptory challenge against prospective juror Katy Dunn. The State then used its ninth peremptory challenge to backstrike Sue Bowman, a black female juror, who was the first person to be called on the first panel. Defendant noted that the State was striking another black juror. Defendant argued that, in the third panel, the State excused Walter Robinson, its first black juror, and Sue Bowman, a black female, who he previously found acceptable in the first panel, to reach the remaining jurors because they were white. Defendant further requested that his challenge be granted based on the fact that the State’s last two strikes were two black jurors in a row.[11] The prosecutor argued that there was no pattern as he had previously accepted several black jurors: Ms. Dumas, Mr. Gordon, and Ms. Schultheis.
The trial court then asked for the race-neutral reason. The State expressed concern regarding Ms. Bowman’s inattentiveness stating either she had a hearing problem or was not listening. The State noted that her name was called out twice because she failed to rise the first time. During the course of questioning, she did not answer responsively to the court’s questions, and she gave incorrect answers or inappropriate responses to questions. The trial court noted that the State’s reasons [2iwere consistent with the court’s observations. Specifically, the court stated that its notes were similar and reflected that Ms. Bowman had a smirk on her face, and she did not seem to comprehend at times.
Defendant argued that the State’s reasoning rose to a challenge for cause; however, not only did it not challenge Ms. Bowman for cause, but it considered her acceptable. The trial court found that it did not rise to the level of cause, but it did observe the behavior that the State was *316 pointing out. The State interjected that after Ms. Bowman was accepted when she was sworn in, she got up to leave after she was asked to stay. Defendant responded “that makes her ditsy.” The State countered that “not being able to hear, not listening, not being able to comprehend is a raise notable for reasoning.” Defendant asked to call Ms. Bowman back for further questioning. However, the trial court found that it was “satisfied based on what [it] saw that [the State] has articulated reasons that are consistent with what the court observed. Defendant again objected to the trial court’s ruling.

Review of peremptory excusal of juror Walter Robinson

The record reflects that when the State used its seventh peremptory challenge to excuse Walter Robinson, it immediately offered a race-neutral explanation, i.e., that Mr. Robinson expressed serious concerns in reference to confidential informants. Defendant then lodged a Batson objection and the trial court inquired as to whether he perceived a pattern. Defendant argued that the State had to prove that there was not one. The prosecutor asserted that the State previously accepted other black jurors; therefore, he did not believe there was a pattern and the trial court agreed. The State again asserted its race-neutral reason for excusing Mr. Robinson and defendant countered that Mr. Robinson said he could follow the law. The State responded that when a person has an issue with | ¡^potential evidence in the State’s case, it provides grounds for a peremptory challenge. The court reasserted that it did not see a pattern and defendant objected.
Thus, the record reflects that in ruling on defendant’s Batson challenge with respect to Mr. Robinson, the trial court found that defendant did not meet his initial burden of establishing a prima facie case of racial discrimination. The trial court was correct in so ruling. The record indicates that although defendant established that Mr. Robinson was a member of a cognizable racial group because he was black and the State used a peremptory challenge to strike him, defendant did not prove relevant circumstances that raise the inference that Mr. Robinson was struck on the basis of race. Mr. Robinson was the first black juror struck by the State. Moreover, the State’s comments do not indicate that the strike was racially motivated; rather, it was based on Mr. Robinson’s issues towards the use of confidential informants, which were used by the police in this case.[12]
Furthermore, the record supports the State’s explanation. Specifically, when the State questioned the prospective jurors as to whether they have any problem with confidential informants being used as a tool in investigations by the Sheriffs Office, Mr. Robinson answered: “I think it’s a flaw too. I think the person has zero credibility because you don’t know why they are bring [sic] that information forward. You know, it could be to protect their own self to get their self out of trouble.” Accordingly, the trial court did not err in denying defendant’s Batson challenge with respect to Mr. Robinson.

Review of peremptory excusal of juror Sue Bowman

When the State used its ninth peremptory challenge to backstrike Sue Bowman, defendant again raised a Batson challenge alleging that the State struck two black jurors in a row and was using its challenges to strike black jurors | ^because there were only white jurors left and defendant had used all of his peremptory *317 challenges. Again, the record reflects that the trial court did not expressly rule that defendant met his burden of establishing a prima facie case of racial discrimination. However, after listening to defendant’s and the State’s arguments, the trial court asked the State to offer a race-neutral reason.
As previously noted, when the trial judge does not rule on whether a defendant asserting a Batson challenge has met his burden to establish a prima facie case of racial discrimination, but rules on the ultimate question of intentional discrimination after the State offers a race-neutral explanation for the peremptory challenge, the issue of whether the defendant made a prima facie showing becomes moot. The record reflects that the State offered a race-neutral reason for the challenge, i.e., inattentiveness,[13] and the trial court properly determined that defendant failed to carry his burden of proving purposeful discrimination. The trial court accepted the race-neutral reasons and commented on the reasons, which indicates that the court was weighing the reasons with the evidence presented by defendant and finding credibility and truthfulness in the State’s offered reasons. Specifically, the trial court asserted that the State’s reasons were consistent with what the court observed and placed in its notes.
Defendant argues that Mary Schultheis, the only alleged African-American juror, had prior jury service on a jury that found the accused guilty. However, it is noted that Sue Bowman also served on a jury that voted guilty, yet she was still dismissed. Defendant also argues that the State used a peremptory challenge to excuse black juror Sue Bowman in the third panel, who was initially accepted on 124the jury in the first panel, to reach the remaining prospective jurors, who were all white. However, juror Paul LaRosa, who was a white male, was also accepted for service by the State in the second panel then excused by the State in the third panel. This rebuts any inference or conclusion that the State backstruck Ms. Bowman to place more white jurors on the jury because it also removed a white juror who it had previously accepted from the panel.
Based on a careful review of the entire voir dire transcript, we find that defendant failed to meet his burden of proving purposeful discrimination in raising a Batson challenge with regard to Ms. Bowman. The State used a peremptory challenge to strike Ms. Bowman because during the voir dire of the subsequent panels, it became apparent that Ms. Bowman either could not hear the instructions given to her or was not paying attention to the instructions given. Thus, the trial court did not abuse its discretion in denying defendant’s Batson challenge with regard to Ms. Bowman.
This assignment of error is without merit.

ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990).
This review indicates that defendant was not properly informed of the time period for seeking post-conviction relief. The original and habitual offender *318 transcripts reflect that the trial court generically informed defendant that he had “two years to seek post-conviction relief.” This advisal is incomplete. Hence, defendant is advised by way of this opinion that pursuant to LSA-C.Cr.P. art. 930.8(A), no application for post-conviction relief, including applications which |2-,seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of LSA-C.Cr.P. art. 914 or 922. See State v. Stokes, 10-171, p. 14 (La.App. 5 Cir. 10/12/10), 50 So.3d 884, 893.
The record also indicates that trial court did not impose defendant’s multiple offender sentence without the benefit of parole for the first two years, as required by the LSA-R.S. 40:967.[14] When a defendant is sentenced as a habitual offender, the penalty increase is computed by reference to the sentencing provisions of the underlying offense. State v. Bruins, 407 So.2d 685, 687 (La.1981). Similarly, the conditions imposed on the sentence are those called for in the referenced statute. Id. However, this error does not require corrective action, because the without-benefits provision of a statute is self-activating. State v. Williams, 00-1725, p. 10 (La.11/28/01), 800 So.2d 790, 799, and LSA-R.S. 15:301.1(A).

CONCLUSION

For the foregoing reasons, defendant’s conviction and sentence are affirmed.

AFFIRMED

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Id.., citing Durio, 371 So.2d at 1161; State v. Winston, 327 So.2d 380 (La.1976) (conviction for distribution of heroin reversed when defense counsel was given only three days in which to prepare for trial); State v. Simpson, 403 So.2d 1214 (La.1981) (trial court constructively denied defendant right to counsel by appointing new attorney on the day of trial who presented no defense, but only cross-examined the State's witnesses).

.Particularly, the witness testified that the detectives never pulled cocaine from the pocket of defendant’s pants.

. 398 So.2d at 1096.

. Id.

. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

. It is noted that the prospective juror’s name appears to be Asian; however, the juror’s race is unclear from the record.

. The State points out that defendant did not object to this excusal during voir dire; however, the State appears to be incorrect in its assertion that defendant agreed that the language barrier might be a problem. The language barrier discussion was made relative to juror Bin Le, whom defendant moved and dismissed for cause.

. "In trials of offenses punishable by death or necessarily by imprisonment at hard labor, each defendant shall have twelve peremptory challenges, and the state twelve for each defendant.” LSA-C.Cr.P. art. 799.

. It is noted that the racial composition of the jury venire and the empaneled jury are not evident in the record. However, during defendant’s third panel Batson challenge, he noted that the State struck its first two African American jurors at that point, which leads to the conclusion that the peremptory challenges used by the State before that point, in the first two panels and a portion of the third panel, were against non-black jurors.

. It appears that defendant was incorrect in his assertion that the trial court struck two black jurors in a row. The record reflects that Katy Dunn was struck in between Mr. Robinson and Ms. Bowman. Although Ms. Dunn’s race is not evident, it appears from the record that both Mr. Robinson and Ms. Bowman were black jurors. Mr. Robinson, Ms. Dunn, and Ms. Bowman were struck consecutively. However, defendant only alleged that two black jurors were struck in a row. If Ms. Dunn were also black, the State would have struck three black jurors in a row. Moreover, in his brief, defendant alleges that Ms. Dunn was white.

. The composition of the venire and the jury finally empaneled are unknown; however, it is clear that at least one of the empaneled jurors was black, Mary Schultheis.

. It is noted that inattentiveness has been found to be an acceptable demeanor-based, race-neutral explanation. See e.g. State v. Johnson, 621 So.2d 1167 (La.App. 2 Cir. 1993), writ denied, 626 So.2d 1178 (La.1993) (veniremen appeared inattentive and unresponsive); State v. Young, 613 So.2d 631 (La. App. 1 Cir.1992), writ denied, 626 So.2d 1186 (La.1993) (same); State v. Manuel, 517 So.2d 374 (La.App. 5 Cir. 1987) (same); State v. Griffin, 618 So.2d 680 (La.App. 2 Cir.1993), writ denied, 625 So.2d 1063 (La.1993) (veniremen all smiles and giggles during voir dire on death penalty).

. LSA-R.S. 40:967(B)(4)(b) states: "Distribution, dispensing, or possession with the intent to produce, manufacture, distribute, or dispense cocaine or cocaine base or a mixture ... shall be sentenced to a term of imprisonment at hard labor for not less than two years nor more than thirty years, with the first two years of said sentence being without benefit of parole, probation, or suspension of sentence; ...."