ROBERT A. CHAISSON, Judge.
12In this appeal, defendant, Detroit Les-trick, seeks review of his two convictions for indecent behavior with a juvenile. For the reasons that follow, we affirm defendant’s convictions, vacate his sentences, and remand the matter for resentencing in accordance with this opinion.

PROCEDURAL HISTORY

On October 26, 2011, the Jefferson Parish District Attorney filed a bill of information charging defendant with two counts of indecent behavior with a juvenile in violation of LSA-R.S. 14:81. At his arraignment, defendant pled not guilty. The matter proceeded to trial before a six-person jury on September 25, 2012. After considering the evidence presented, the jury returned a verdict of guilty as charged on September 27, 2012.
On October 3, 2012, defendant filed a motion for new trial, which the trial court heard and denied the next day. Defendant then waived sentencing delays and was sentenced on each count to a concurrent sentence of seven years at hard labor, with all but two years suspended. The trial court also ordered defendant to register as a sex offender. Defendant now appeals.

\ ¡PACTS

At approximately 3:00 a.m. on August 27, 2011, Detective Thomas Guy of the Jefferson Parish Sheriffs Office responded to a residence in Marrero in reference to a complaint of child molestation. When the detective arrived, he spoke with the mothers of the two juvenile victims before interviewing each victim separately, who were both “visibly upset.” After learning that the alleged incident occurred in Westwego, the investigation was turned over to the Westwego Police Department. Detective Brett Taylor of the Westwego Police Department then went to the Marrero residence where he spoke to the victims and their mothers: B.A. and her daughter, N.D., and S.K. and her daughter, S.K.(l).[1]
*426 In speaking to the victims separately, the detective found their stories to be consistent.
After failing to appear three times for forensic interviews at the Children’s Advocacy Center (CAC), N.D. and S.K.(1) were finally interviewed on October 24, 2011, by Suzanne Jolissaint. Then, on November 9, 2011, at the Audrey Hepburn Care Center at Children’s Hospital, N.D. and S.K.(1) were interviewed and medically examined by Anne Troy, a forensic nurse practitioner and an expert in child abuse pediatrics. In these interviews, and subsequently at trial, N.D. and S.K.(1) each described substantially the same events.[2]
N.D. explained that one night defendant asked B.A. if N.D. and S.K.(l) could accompany him to his apartment in Westwe-go to check his mail. B.A., concerned for defendant because he had been drinking, allowed her daughter and S.K.(1) to accompany him. B.A. gave N.D. her cell phone to carry with her.
|4Upon arriving at his apartment, defendant and the two girls watched television. N.D. sat on the bed, defendant lay on the bed, and S.K.(1) stood up. While on the bed, defendant tried to “dig inside” the back of N.D.’s shorts. She explained that “he didn’t get that very far” and he did not touch her “butt.”[3] After telling defendant to stop, N.D. got up and moved to the other side of the bed. Nevertheless, defendant attempted again to reach in N.D.’s shorts, prompting N.D. to stand up.
Then, after N.D. sat back down, S.K.(l) observed defendant attempt to touch N.D. a third time and warned her. N.D. stood back up. Soon thereafter, the two girls and defendant left to go to the store so he could buy another drink, and they then returned to defendant’s apartment.
N.D. and S.K.(l) lay across the bed to watch television. S.K.(l) fell asleep. Defendant soon joined the girls on the bed. Unbeknownst to N.D. at the time, she later learned that defendant was “messing with” S.K.(1), which prompted S.K.(l) to get up and state that she was ready to leave. The two girls got up off the bed and returned to the car where S.K.(l) told N.D. what had happened.
Thereafter, as defendant drove the girls back home, N.D. typed a question on her cell phone, asking S.K.(l) if she wanted to tell their mothers what had occurred with defendant. N.D. handed the phone to S.K.(l), but S.K.(l) did not know how to type on the phone, so she orally replied, “Yea, I wanna tell.” This prompted defendant to ask “Tell about what?” Not wanting defendant to know what they were talking about, N.D. fabricated a story about her sister. When N.D. wouldn’t elaborate on this, defendant attempted to get it out of S.K.(l), reaching into the back seat, tapping her, and asking “Tell about what?” While reaching back, he touched S.K.(l)’s “private area” twice.
|fiS.K.(l)[4] explained that one night her aunt, B.A., wanted her and her cousin, *427 N.D., to accompany defendant, B.A.’s boyfriend, to his apartment to “make sure he was okay” because he had been drinking. When they arrived at defendant’s apartment, S.K.(l) and N.D. watched television on the bed for a few minutes before leaving with defendant to go to the store so he could buy another drink. The two girls returned to defendant’s apartment with him and resumed watching television on the bed. They lay down and defendant soon joined them. S.K.(1) was half asleep when defendant started to “rub” the skin of her chest. S.K.(l) moved his hand way from her and asked him what he was doing, but he acted like he did not know what was going on. S.K.(l) stood up and demanded to leave, though defendant wanted to stay to continue watching television.
Defendant eventually brought the girls home. During the drive, S.K.(l) and N.D. were discussing whether they would tell their parents what happened, which provoked defendant to ask what they were talking about. Defendant then reached in the back seat to tap S.K.(1) and rubbed S.K.(l)’s vagina on top of her clothes.[5]
N.D.’s mother, B.A., testified that she began dating defendant in February of 2011, he lived with her for a month or two starting in April of 2011, and they broke up sometime in June or July of 2011. Then, in August of 2011, B.A. and defendant resumed talking and seeing each other. Defendant resided in an apartment in Westwego, though he often slept at B.A.’s house.
B.A. testified that one night around the time that defendant and B.A. had resumed their relationship, defendant told B.A. he was heading over to his apartment to check the mail and he asked if N.D. and S.K.(1) could accompany | fihim. Although defendant had been drinking alcohol that night, B.A. permitted the two girls to go and gave N.D. a cell phone to carry with her. After they had been gone for a while, B.A. called her daughter, asking where they were. N.D. explained that she and her cousin were inside with defendant watching television. As more time passed, B.A. continued calling her daughter, who continued to inform her mother that they were still watching television. B.A. called defendant several times, urging him to bring the girls home. B.A. estimated that the girls were with defendant for “about 45 minutes to an hour,” leaving sometime between 9:00 and 10:00 p.m. and returning after 11:00 p.m.
Eventually when N.D. and S.K.(l) returned home that night, they retreated to N.D.’s room while B.A. fell asleep. The next morning around 7:00 a.m., with defendant present, N.D. and S.K.(1) awakened B.A., informing her that they had to tell her something and that defendant had to leave the room. After defendant left the room, the girls explained that when they were in his one-room apartment, they sat on his bed to watch television. As the girls began to describe how defendant touched them, B.A. cut them off and called defendant back into the room, at which point the girls described what he had done to them. N.D. explained that defendant had grabbed the back of her shorts. S.K.(1) explained that defendant had rubbed his hand across her chest. Defendant denied the accusations. B.A. told S.K(l) to call and inform her mother of the situation. Later, with S.K. present, the girls again explained what had oc *428 curred, while defendant continued his denial.
B.A. confronted her daughter, telling her that the accusation was serious and that she should not lie about something like this. N.D. and S.K(l) maintained their accusations. Upon observing N.D.’s demeanor in the presence of defendant as “pale,” B.A. asked defendant again if he had done what the girls were accusing him of, and he continued to deny it. In the early morning hours of August 27, |72011, B.A. called the police to report that defendant had touched the two girls. When the police arrived, N.D. and S.K.(1) described to the officer what had happened.
The defense called Mildred Ardis, who testified that she resided near defendant in August of 2011, and has known defendant his entire life and defendant’s mother since she was young. Ms. Ardis testified that on August 25, 2011, she was outside, as is her custom, from 4:00 p.m. until 10:30 p.m. visiting with defendant’s mother. On this day, during this time, Ms. Ardis testified that she did not see defendant come to his apartment. She explained that she had the vantage point to observe defendant enter his apartment and that he could not have entered his apartment without her observing him.
Verna Reed, defendant’s mother, testified that on the evening of August 25, 2011, she was visiting Mildred Ardis at her residence from 4:00 p.m. until 10:35 p.m. Ms. Reed testified that she did not see defendant come to his apartment during this time and that she was in a position to see him if he had.
Defendant took the stand and denied that he took N.D. and S.K.(1) to his apartment on August 25, 2011. He testified that on August 25, 2011, he was with B.A. all day. Later in the evening, when N.D. was home from school, B.A. and defendant got into an argument over money. Defendant stated he did not leave the house that night.
Defendant testified that on August 26, 2011, he got off work at 2:30 p.m., picked up his two children, took them to the park, then to get an Icee, and then to a movie. The movie ended around 9:30 or 10:00 p.m. after which defendant dropped his children off to his mother. Around this time, defendant received a phone call from B.A. asking to meet her. Defendant met B.A. at her sister’s house, where he picked her up along with N.D. and S.K.(l), and returned to B.A.’s house. During |sthe ride, everyone was “silent,” and defendant found them to be “acting funny.” Eventually B.A. confronted defendant about touching N.D. and S.K(l), which he denied then and continued to deny on the stand. Defendant explained that B.A. called the police on him on August 27, 2011, “over money.”

SUFFICIENCY OF THE EVIDENCE

On appeal, defendant challenges the sufficiency of the evidence used to convict him. He contends that the State failed to prove the elements of the offense beyond a reasonable doubt, pointing to numerous inconsistencies in the witnesses’ testimony.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Perkins, 11-162 (La.App. 5 Cir. 12/28/11), 83 So.3d 250, 255. Under the Jackson standard, a review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the *429 trial established guilt beyond a reasonable doubt. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Jones, 08-20 (La. App. 5 Cir. 4/15/08), 985 So.2d 234, 240.
In the present case, defendant was charged with two counts of indecent behavior with juveniles. LSA-R.S. 14:81 provides, in pertinent part, as follows:
A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
In(l) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons.
Thus, to convict a defendant of indecent behavior with a juvenile, the State must prove that (1) there was an age difference of greater than two years between the defendant and the victim, who was not yet seventeen; (2) the defendant committed a lewd or lascivious act upon the person or in the presence of a child; and (3) the defendant intended to arouse or gratify either his own or the victim’s sexual desires. State v. Anderson, 09-934 (La.App. 5 Cir. 3/23/10), 38 So.3d 953, 957-958, writ denied, 2010-0908 (La.11/12/10), 49 So.3d 887.
For purposes of LSA-R.S. 14:81, a lewd and lascivious act is “one which tends to excite lust and to deprave the morals with respect to sexual relations and which is obscene, indecent, and related to sexual impurity or incontinence carried on in a wanton manner.” State v. Lande, 06-24 (La.App. 5 Cir. 6/28/06), 934 So.2d 280, 291, writ denied, 06-1894 (La.4/20/07), 954 So.2d 154. This encompasses not only the physical touching of the victim in an indecent manner, but also indecent sexual displays in the presence of children under the age of seventeen. State v. Interiano, 03-1760 (La.2/13/04), 868 So.2d 9, 15. In determining whether an act is lewd or lascivious, one must consider the time, the place, and all of the circumstances surrounding its commission, including the actual or implied intention of the actor. State v. Lande, 934 So.2d at 291.
Indecent behavior with a juvenile is a specific intent crime for which the State must prove the offender’s intent to arouse or gratify his sexual desires by his actions involving a child. Specific intent to commit indecent behavior with juveniles need not be proven as fact, but may be inferred from the circumstances and actions of the defendant. State v. Borden, 07-396 (La. App. 5 Cir. 5/27/08), 986 So.2d 158, 166, writ denied, 08-1528 (La.3/4/09), 3 So.3d 470.
| ]0In the present case, the evidence presented at trial established that on August 25, 2011, 26-year-old defendant brought 13-year-old N.D. and 14-year-old S.K.(1) to his apartment in Westwego. Upon arriving at his apartment, the three watched television, and at some point, the three were lying on the bed together. While on the bed, defendant inserted or attempted to insert his fingers just inside the waistband of N.D.’s shorts near her lower back three times. Also, during the course of the evening, as they were lying on the bed, defendant started to rub the skin of S.K.(l)’s chest. Defendant eventually brought the girls home, and at some point during the ride, defendant rubbed S.K.(l)’s vagina on top of her clothes. Defendant’s activities of lying on the bed with two juveniles half his age, his repeated touching of N.D., and his touching of S.K.(l)’s chest and vagina, indicate that his actions were not accidental, but rather *430 were lewd and lascivious acts performed with the specific intent to arouse or gratify his sexual desires. Accordingly, we find that the State proved the elements of the offense as to both juveniles beyond a reasonable doubt.
In his appellate brief, defendant argues that various inconsistencies in the testimony of the State’s witnesses rendered the evidence insufficient to support his convictions. A review of the trial record confirms that there were indeed inconsistencies; however, they predominantly concerned the chronology of events. The core details of the sexual contact, on the other hand, remained consistent throughout the victims’ interviews and trial testimony.
The credibility of witnesses presenting conflicting testimony of factual matters is within the sound discretion of the trier of fact. The trier of fact shall evaluate the witnesses’ credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Jones, 985 So.2d at 240. The victim’s testimony alone can be sufficient to ^establish the elements of a sexual offense, even when the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. State v. Anderson, 38 So.3d at 959.
In the instant case, the jury was presented with all of the evidence and, by its verdict, evidently gave credence to the victims’ version of events and rejected defendant’s claim that he did not bring the girls to his apartment that evening or touch them. It is not the function of the appellate court to re-evaluate the credibility of witnesses or reweigh the evidence. State v. Cajfrey, 08-717 (LaApp. 5 Cir. 5/12/09), 15 So.3d 198, 202, writ denied, 09-1305 (La.2/5/10), 27 So.3d 297. Accordingly, viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found that the State proved, beyond a reasonable doubt, that defendant was guilty of two counts of indecent behavior with a juvenile.

DENIAL OF MOTION TO CONTINUE TRIAL

On appeal, defendant also' argues that the trial court erred in denying his motion to continue the trial after the State informed the defense on the first day of trial of its intention to introduce defendant’s statement from a previous sex offense conviction.
On January 26, 2012, the State informed the defense that it would file a motion pursuant to LSA-C.E. art. 412.2 for the purpose of introducing evidence of other crimes. On March 1, 2012, the State filed its motion, in which it noticed its intent to introduce evidence of defendant’s prior guilty plea to misdemeanor carnal knowledge of a juvenile. On March 22, 2012, the trial court conducted a hearing on the State’s motion and ruled that it would determine the admissibility of the prior offense at the time the State sought to introduce it.
112Thereafter, on September 25, 2012, the first day of trial, the State provided the defense with a copy of a motion to suppress statement that had been filed in the matter of defendant’s prior guilty plea relative to a statement given by defendant in the matter. The statement had been deemed to have been “constitutionally obtained.” The State informed the defense and the court of its intention to introduce the tape recording and transcript of that prior statement.
Defense counsel then moved for a continuance asserting that he was prejudiced *431 by the State’s late disclosure of its intent to use defendant’s prior statement and was effectively prevented from mounting a defense. After hearing the arguments of counsel, the trial court denied the motion for continuance. Defendant now seeks review of this ruling.
A motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good ground therefor. LSA-C.Cr.P. art. 712.
A motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good ground therefor. LSA-C.Cr.P. art. 712. The decision whether to grant or refuse a motion for a continuance rests within the sound discretion of the trial judge, and a reviewing court will not disturb such a determination absent a clear abuse of discretion. In addition, the denial of a motion for continuance is not grounds for reversal absent abuse of discretion and a showing of specific prejudice. State v. Shannon, 10-580 (La.App. 5 Cir. 2/15/11), 61 So.3d 706, 715, writ denied, 11-0559 (La.9/30/11), 71 So.3d 283.
Further, the denial of a motion for continuance on grounds of counsel’s lack of preparedness does not warrant reversal unless counsel demonstrates specific prejudice resulting from the denial. This specific prejudice requirement has been disregarded by the Louisiana Supreme Court in cases where the preparation time was so minimal as to call into question the basic fairness of the proceeding. State v. Victor, 11-Í5 (La.App. 5 Cir. 11/15/11), 82 So.3d 301, 307-308.
| ^Criminal discovery rules are intended to eliminate unwarranted prejudice which arises from surprise testimony and evidence in order to permit the defense to respond to the State’s case and allow the defense to properly assess the strength of the State’s case. A conviction is only reversible when the defendant is prejudiced as a result of the discovery violation. State v. McGinnis, 04-1286 (La. App. 5 Cir. 10/6/05), 917 So.2d 471, 484-485, writ denied,, 05-2469 (La.4/28/06), 927 So.2d 283.
In this case, we find no abuse of discretion in the district court’s denial of defendant’s motion to continue trial. Defense counsel first learned of the State’s intention to introduce other crimes evidence on January 26, 2012-nine months before trial. Then, on March 1, 2012, nearly seven months before trial, defense counsel learned the specific prior conviction sought to be introduced. On March 22, 2012, the court conducted a hearing on the State’s motion and ruled that it would determine the admissibility of the prior offense at the time the State sought to introduce it.
Thus, although defense counsel did not learn until the first day of trial that the State planned to introduce defendant’s statement from his prior conviction, counsel knew long before trial of the State’s intent to introduce evidence of defendant’s conviction. In fact, defense counsel admitted, when he was arguing the continuance, that he received notice prior to trial that the State was going to put on evidence of defendant’s prior conviction as evidence of lustful disposition, and in fact, there was a hearing on the issue. Given that defense counsel had knowledge of the State’s intent to use the prior offense to which defendant admitted his guilt since January of 2012, his ability to prepare a defense was in no way hampered. Moreover, we note that the trial judge, in denying the continuance, stated that defense counsel would have an opportunity to work with his client and 114the statement prior to the presentation of the evidence. Other than the bare assertion of an inability to mount *432 a defense, defendant has failed to demonstrate how he was specifically prejudiced by the statement’s introduction or by the trial court’s denial of his motion to continue.
Accordingly, given these circumstances, we find no abuse of discretion in the trial court’s denial of defendant’s motion for continuance.

DENIAL OF MOTION FOR MISTRIAL

In another assigned error, defendant argues that the trial court erred in denying his motion for a mistrial when the prosecutor commented upon inadmissible other crimes evidence. Defendant contends he was unfairly prejudiced by the prosecutor’s questioning him about whether or not the police had been called in reference to a previous argument he had with B.A.
During the State’s cross-examination of defendant regarding his relationship with B.A., the following exchange took place:
[STATE]: All right. So you in June, y’all got into a big argument about money?
[DEFENDANT]: Yes.
[STATE]: How big?
[DEFENDANT]: We broke up.
[STATE]: Okay. A bunch of shouting?
[DEFENDANT]: It wasn’t — it was just — you know, it was like a argument.
[STATE]: All right. And when did she call the cops on you in June?
[DEFENDANT]: What you talking about? She never called no cops on me in June.
[STATE]: But y’all had a fight over money.
[DEFENDANT]: All right. That was a argument.
h.JSTATE]: Okay. Y’all argued over money, right?
[DEFENDANT]: Yeah. We didn’t — I did not fight her.
[STATE]: So she called the cops on you to report you?
[DEFENDANT]: No. What is you talking about?
At this point, the defense moved for a mistrial. The following occurred during the subsequent bench conference:
[DEFENSE]: He’s — I mean do you have evidence that he- — she called the cops on him?
[STATE]: She didn’t.
[THE COURT]: She didn’t.
[DEFENSE]: Well, that’s the point. He’s—
[THE COURT]: You didn’t understand that?
[DEFENSE]: No, I understand — now I understand, but he’s inferring to the jury’s mind that there’s some sort of police thing—
[THE COURT]: No, I don’t think so.
[DEFENSE]: — that’s going on.
[THE COURT]: I think the jury understands.
⅜ sK *
[DEFENSE]: Well, maybe so but he can’t say things like that that aren’t true. He’s putting it in their minds that there was some sort of police conduct or a physical fight, and the police were called. I object and I ask for a mistrial. He can’t — he can’t do that.
[THE COURT]: Your motion’s denied.
The State then resumed questioning as follows:
[STATE]: In June [B.A.] never called the cops, right?
[DEFENDANT]: No.
| ^Defendant now argues that the trial court erred in denying his motion for mis *433 trial. Specifically, defendant contends that the State’s questioning regarding whether or not the police had been called in reference to a previous argument he had with B.A. constituted inadmissible other crimes evidence which was unfairly prejudicial.
Except under certain statutory or jurisprudential exceptions, evidence of other crimes or bad acts committed by the defendant is inadmissible at trial. LSA-C.E. art. 404(B)(1). State v. Walker, 03-1072 (La.App. 5 Cir. 12/30/03), 865 So.2d 172, 174. LSA-C.Cr.P. art. 770(2) provides that a mistrial shall be granted, upon motion of the defendant, when a remark or comment is made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument and that remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. State v. Ven-tris, 10-889 (LaApp. 5 Cir. 11/15/11), 79 So.3d 1108,1122.
As a general rule, LSA-C.Cr.P. art. 770 does not apply to testimony by a state witness, since a witness is not considered a “court official.” However, an impermissible reference to another crime deliberately elicited of a witness by the prosecutor is imputable to the State and triggers the rule mandating a mistrial. State v. Amaud, 12-899 (LaApp. 5 Cir. 5/16/13), 113 So.3d 1218, 1223. In State v. Edwards, 97-1797 (La.7/2/99), 750 So.2d 893, 906, cert, denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999), the Louisiana Supreme Court stated that the “comment must not ‘arguably’ point to a prior crime; to trigger mandatory mistrial pursuant to Article 770(2), the remark must ‘unmistakably’ point to evidence of another crime,” and “the imputation must ‘unambiguously’ point to defendant.”
| l7In the instant case, we find that a mandatory mistrial was not warranted pursuant to the provisions of LSA-C.Cr.P. art. 770. Defendant was a witness and not a court official within the meaning of Article 770. Further, the remark at issue does not “unmistakably” point to evidence of another crime, or even allege criminal activity. Moreover, as evidenced by the prosecutor’s subsequent questions, he intended to show that the police had not been called with regard to their argument in June. Given these circumstances, we find that a mandatory mistrial was not warranted under the provisions of LSA-C.Cr.P. art. 770.
Rather, the prosecutor’s questions fall under the discretionary mistrial provisions of LSA-C.Cr.P. art. 771. That article provides as follows:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
A mistrial is a drastic remedy and is warranted only when trial error *434 results in substantial prejudice to defendant that deprives him of a reasonable expectation of a fair trial. Whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed absent an abuse of discretion. State v. Chairs, 12-363 (La.App. 5 Cir. 12/27/12), 106 So.3d 1232, 1244, writ denied, 13-0306 (La.6/21/13), 118 So.3d 413.
11sIn the instant case, it is noted that defense counsel did not request an admonition under LSA-C.Cr.P. art. 771. Further, defendant has failed to show that he was substantially prejudiced by the questioning regarding whether police had been called out for a previous argument. In fact, through the State’s questioning, it was made clear that the police had not been called out. See State v. Johnson, 11-238 (La.App. 5 Cir. 12/28/11), 83 So.3d 1075, 1080. Accordingly, we find no abuse of discretion in denying defendant’s request for a mistrial.

OTHER CRIMES EVIDENCE

In his final assignment of error, defendant argues that the trial court erred in permitting the State to introduce evidence of his prior misdemeanor guilty plea to carnal knowledge of a juvenile. He contends the prior conviction was more prejudicial than probative because it served no purpose other than to depict defendant as a chronic offender and because the prior offense was not even similar to the instant offense.
In its pre-trial “Notice of Intent to Introduce Evidence of Similar Crimes in Sex Offense Cases Pursuant to LSA-C.E. art. 412.2,” the State submitted that the evidence of defendant’s prior guilty plea to carnal knowledge of a juvenile was admissible because the present and prior offenses were committed against victims under the age of 17, indicating defendant’s lustful disposition toward children.
At the hearing on the motion, the trial court ruled that it would determine the admissibility of the prior offense at the time the State sought to introduce it. On September 26, 2012, before presentation of evidence commenced, the trial court ruled that the prior offense was admissible. Subsequently, near the conclusion of trial, defendant admitted during direct examination that he had previously pled guilty to carnal knowledge of a juvenile wherein he was 18 years old when he engaged in sexual intercourse with a 15-year-old female he claimed was his | ^girlfriend. Defendant now contends that the admission of this prior conviction was more prejudicial than probative and further claims that any error in its admission cannot be deemed harmless.
LSA-C.E. art. 412.2 governs the admission of evidence of similar crimes, wrongs, or acts in sex offense cases. It provides, in pertinent part, as follows:
When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused’s commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may-be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
LSA-C.E. art. 403 provides that, “[a]l-though relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.”
*435 Accordingly, pursuant to LSA-C.E. art. 412.2, evidence of a prior sexual offense is admissible if relevant and if the probative value of the evidence outweighs its prejudicial effect. Rulings on the admissibility of evidence will not be disturbed absent an abuse of discretion. State v. Olivieri, 03-563 (La.App. 5 Cir. 10/28/03), 860 So.2d 207, 218.
In State v. Williams, 11-876 (La.App. 5 Cir. 3/27/12), 91 So.3d 437, 441, unit denied, 12-1013 (La.9/21/12), 98 So.3d 334, the defendant was charged with molestation of a 9-year-old girl and this Court found his prior conviction of carnal knowledge of a 13-year-old girl was highly relevant, and thus admissible, to show his lustful disposition toward young girls. Additionally, this Court noted that although the charged offense involved touching and the prior conviction involved intercourse, there is no requirement that the prior act be identical in nature to the 1 ^charged offense. In finding the prior offense “not so prejudicial so as to warrant its exclusion under LSA-C.E. art. 403,” this Court reasoned:
There was no indication that the other crimes evidence confused or misled the jury. The evidence was presented in an orderly manner, and the trial judge gave a limiting instruction regarding the prior conviction when the State presented the certified copy of defendant’s prior conviction and prior to jury deliberations. The trial court also clearly instructed the jurors that they were not to find guilt in this case based on the other sexual offense.
State v. Williams, 91 So.3d at 442
In this case, we find that the trial court did not err in ruling the prior conviction admissible. Defendant was charged with indecent behavior with two juvenile girls, ages 13 and 14, and the evidence of the prior act with a 15-year-old girl was relevant to show defendant’s lustful disposition toward teenage girls. Additionally, although the present offenses involved only touching, and the previous offense involved intercourse, there is no requirement that the prior offense be identical in nature to the charged offense. State v. Williams, 91 So.3d at 441. Rather, defendant’s engaging in sexual behavior with girls around the same age indicates his lustful disposition toward young teenage girls.
We also find, as did the trial court, that the evidence of the prior offense is more probative than prejudicial. There was no indication that the other crimes evidence misled or confused the jury. The evidence was presented in an orderly manner with the evidence of defendant’s prior offense being presented at the conclusion of trial. In addition, the trial court gave the jury a limiting instruction, advising them as follows:
Evidence that the defendant was involved in the commission of an offense other than the offenses for which he is on trial is to be considered only for a limited purpose. Such evidence may be considered for its bearing on any matter to which it is relevant. Remember the accused is on trial only for the offenses charged. You may not find him guilty of these offenses merely because he may have committed another offense.
|21Based on the foregoing, the evidence of the prior conviction was clearly relevant to show defendant’s lustful disposition, and further, the probative value of the other sexual offense evidence outweighed the danger of unfair prejudice to defendant. Accordingly, we find that the trial court did not abuse its discretion in admitting the evidence of defendant’s prior conviction of carnal knowledge of a juvenile.

*436
ERROR PATENT REVIEW

We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Wetland, 556 So.2d 175 (La.App. 5 Cir.1990).
Our review reveals that defendant’s sentences are illegal and must be vacated. The trial court sentenced defendant, on each count, to seven years at hard labor, and suspended all but two years on each count. The trial court did not place defendant on probation. Although a trial court is permitted to suspend the imposition of a sentence under LSA-C.Cr.P. art. 893, it must place the defendant on probation when it does so. State v. Ramirez, 96-302 (La.App. 3 Cir. 11/6/96), 684 So.2d 52, 54.
Since the trial court suspended portions of each of defendant’s sentences, but did not place defendant on probation, we find that defendant’s sentences are illegal. Accordingly, we vacate defendant’s sentences and remand the matter for resentencing in accordance with LSA-C.Cr.P. art. 893.
We further note, as part of this error patent review, that the trial court failed to advise defendant of the prescriptive period for post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8. On remand for resentencing, we instruct the trial court to advise defendant of the prescriptive period under this article.
| ¡^Accordingly, for the reasons set forth herein, we affirm defendant’s convictions, vacate his sentences, and remand the matter to the trial court for resentencing in accordance with this opinion.

CONVICTIONS AFFIRMED; SENTENCES VACATED; MATTER REMANDED FOR RESENTENCING

. To observe the principle of protecting minor victims and victims of sexual offenses set forth in LSA-R.S. 46:1844(W)(3), the victim and any witness whose name can lead to the *426 victim’s identity, i.e., parent, sibling, or relative with the same last name as the victim, will be identified by initials only. To differentiate between S.K. and her daughter, who share the same initials, the child will be designated by ''S.K.(l),” the mother by ''S.K.”

.S.K. is B.A.'s niece, and S.K.(l) is B.A.'s great niece. Further, defendant was B.A.’s boyfriend.

. In the video recording of N.D.'s CAC interview, as N.D. explained how defendant dug in her shorts, she demonstrated what defendant did, inserting her fingers just inside the waistband of her shorts near her lower back.

. It is noted that S.K.(1) had previously made allegations against another man, T.R., an ex-boyfriend of B.A. and the father of B.A.’s son. However, the police were not called because S.K.(1) admitted that the allegations were not true. It is further noted that both S.K. and *427 S.K.(1) asked the prosecutor to drop the charges against defendant in this case.

. In the CAC interview, S.K.(1) gestured to her vaginal area when speaking of her "private part.”